IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| REMBRANDT ENTERPRISES, INC., | Case No.15-cv-4248 |
| Plaintiff, | |
| vs. | Answer, Affirmative Defenses and Counterclaims |
| DAHMES STAINLESS, INC., | |
| Defendant. | |

## ANSWER

Defendant Dahmes Stainless, Inc. ("Dahmes") for its Answer to Complaint filed by Plaintiff Rembrandt Enterprises, Inc. ("Rembrandt" or "Plaintiff"), states the following:

1. Rembrandt is an Iowa corporation with its principal place of business in Rembrandt, Iowa.

RESPONSE: Upon information and belief, the allegations of paragraph 1 are admitted.

2. Dahmes is a Minnesota corporation with its principal place of business in New London, Minnesota.

RESPONSE: The allegations of paragraph 2 are admitted.

3. Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332(a) because both parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

RESPONSE: The allegations of paragraph 3 are admitted.

4. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b)(2). Given that Rembrandt's affected site is in Thompson, Iowa, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. In connection with the events underlying this suit, Dahmes visited and directed activities to Iowa and this judicial district.

RESPONSE: Dahmes denies the allegations of paragraph 4.

## BACKGROUND FACTS

5. In the spring and early summer of 2015, an unprecedented wave of highly pathogenic avian influenza ("HPAI") decimated Rembrandt's poultry operations, contaminating six of its egg producing and/or pullet locations.

RESPONSE: Dahmes lacks knowledge or information sufficient to form a belief about the truth of this allegation and therefore denies the same.

6. Prior to the 2015 HPAI wave, Rembrandt was one of the nation's largest egg producers with operations in numerous states, and had plans to expand its business. These expansion plans included plans to create a new processing plant in Thompson, Iowa (the "Planned Thompson Plant"), to be used to process eggs supplied by planned expansions in new egg production facilities. As part of this planned expansion (and only because of this planned expansion), Rembrandt endeavored to purchase a dryer system for the Planned Thompson Plant (the "Dryer System").

RESPONSE: Dahmes admits Rembrandt had plans to create a new processing plant in Thompson, Iowa and that Rembrandt sought to purchase a dryer system for the Planned Thompson Plant. Dahmes denies the remaining allegations of this paragraph. On

2

information and belief, Dahmes affirmatively states Rembrandt remains one of the nation's largest egg producers.

7. Rembrandt agreed to purchase the Dryer System for the Planned Thompson Plant from Dahmes, and the parties entered into an agreement on or about November 20, 2014 (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit A.

RESPONSE: The Agreement at Exhibit A speaks for itself and does not require a response. To the extent that it does, Dahmes admits Rembrandt agreed to purchase the Dryer System for the Planned Thompson Plant from Dahmes, and the parties entered into an agreement on or about November 20, 2104, to which the Court is respectfully referred for the contents thereof.

8. Pursuant to the terms of the Agreement, Rembrandt made significant up-front payments, beginning with an initial down payment of $2,550,891.90 in November 2014, followed by several additional payments from January to May of 2015. In all, Rembrandt has pre-paid Dahmes $4,311,593.14 for the Dryer System.

RESPONSE: Dahmes admits it received $4,311,593.14 from Rembrandt between November 2014 and May 2015. Dahmes denies the remaining allegations of paragraph 8.

9. The 2015 HPAI outbreak devastated Rembrandt's egg production facilities, wiping out two-thirds of its existing production, and ended any possibility of expansion. Both the overall egg production market and Rembrandt's business prospects fundamentally shifted. As a result, the Planned Thompson Plant became completely unworkable and commercially impracticable, and the purpose of the Agreement was frustrated.

RESPONSE: The allegations of paragraph 9 are denied.

3

10. On May 14, 2015, Rembrandt notified Dahmes in writing of the HPAI outbreak's effect on Rembrandt's business, and informed Dahmes that it should immediately "cease and desist all work" at the Planned Thompson Plant. A true and correct copy of that May 14, 2015, letter is attached hereto as **Exhibit B**.

RESPONSE: The e-mail at Exhibit B speaks for itself and does not require a response. To the extent that it does, Dahmes admits that Rembrandt sent Dahmes an email dated May 14, 2015, to which the Court is respectfully referred for the contents thereof.

11. In subsequent discussions over the following months, Rembrandt informed Dahmes that all of its business plans for the Planned Thompson Plant, including the purchase of the Dryer System, were no longer viable in light of the unanticipated HPAI outbreak and its effect on Rembrandt's business and the broader poultry business in the Midwest. In response to this communication, and Rembrandt's efforts to work with Dahmes to determine the reasonable value of the work Dahmes had performed under the Agreement, on November 11, 2015, Dahmes stated in an email that it "consider[s] the contract terminated by Rembrandt without cause" and that Rembrandt was in "breach of our contract." A true and correct copy of this November 11, 2015, email is attached hereto as **Exhibit C**.

RESPONSE: The email at Exhibit C speaks for itself and does not require a response. To the extent that it does, Dahmes admits that Rembrandt and Dahmes exchanged emails on November 11, 2015, to which the Court is respectfully referred for the contents thereof.

12. *Subject to Motion to Strike*

4

RESPONSE: The allegations in paragraph 12 are subject to Defendant's Motion to Strike, or in the Alternative Seal. Defendant has requested leave to answer the allegations of paragraph 12 should the Court rule that paragraph 12 should not be stricken.

13. *Subject to Motion to Strike*

RESPONSE: The allegations in paragraph 13 are subject to Defendant's Motion to Strike, or in the Alternative Seal. Defendant has requested leave to answer the allegations of paragraph 13 should the Court rule that paragraph 13 should not be stricken.

## COUNT ONE (Declaratory Judgment)

14. Rembrandt repeats and realleges the preceding paragraphs as if fully set forth herein.

RESPONSE: Dahmes re-states the answers to paragraphs no. 1 through 13 for its answer to this paragraph.

15. Under the doctrines of frustration of purpose and commercial impracticability, Rembrandt is excused from performance under the Agreement, and is entitled to rescission of the Agreement.

RESPONSE: The allegations of paragraph 15 are denied.

16. Accordingly, Rembrandt is entitled to a declaration that it is not in breach of the Agreement, and that it entitled to rescission of the Agreement.

RESPONSE: The allegations of paragraph 16 are denied.

## COUNT TWO (Restitution)

17. Rembrandt repeats and realleges the preceding paragraphs as if fully set forth herein.

5

RESPONSE: Dahmes re-states the answers to paragraphs no. 1 through 16 for its answer to this paragraph.

18. Under the Agreement, the value of Rembrandt's performance substantially exceeded the value of Dahmes's performance.

RESPONSE: The allegations of paragraph 18 are denied.

19. Because Rembrandt is excused from performance under the Agreement and entitled to rescission of the Agreement, Rembrandt is entitled to restitution to prevent Dahmes's unjust enrichment in an amount to be proven at trial.

RESPONSE: The allegations of paragraph 19 are denied.

## COUNT THREE (Accounting)

20. Rembrandt repeats and realleges the preceding paragraphs as if fully set forth herein.

RESPONSE: Dahmes re-states the answers to paragraphs no. 1 through 19 for its answer to this paragraph.

21. Under the Agreement, the value of Rembrandt's performance substantially exceeded the value of Dahmes's performance.

RESPONSE: The allegations of paragraph 21 are denied.

22. Because Rembrandt is excused from performance under the Agreement and entitled to rescission of the Agreement, Rembrandt is entitled to an accounting to determine the amount of Rembrandt's payment Dahmes is entitled to keep and which portion it must refund to Rembrandt.

RESPONSE: The allegations of paragraph 22 are denied.

## GENERAL DENIAL

Except as previously admitted in paragraphs 1 through 22, Dahmes denies each and every allegation contained in paragraphs 1 through 22 of the Complaint, including without limitation, the headings and subheadings, and specifically denies liability to Rembrandt, or that Rembrandt has suffered any legally cognizable harm or damages for which Dahmes is responsible. Pursuant to Rule 8(b)(6) of the Federal Rule of Civil Procedure, allegations contained in the Complaint to which no responsive pleading is required shall be deemed denied. Dahmes expressly reserves the right to amend and/or supplement its Answer.

With respect to all paragraphs in the Complaint which Rembrandt prays for damages or other relief, Dahmes denies that Rembrandt is so entitled under the law.

## AFFIRMATIVE DEFENSES

Dahmes asserts the following affirmative and other defenses, without assuming the burden of proof on such defenses that would otherwise rest on the Plaintiff, and reserving the right to raise any additional defenses not asserted herein of which it becomes aware through discovery or other investigation:

1. The Complaint, and each and every claim stated therein, fails to state a claim upon which relief can be granted.

2. Plaintiff's claims are barred by the doctrine of assumption of risk.

3. Plaintiff's claims are barred by its failure to perform pursuant to the terms of the parties' agreement.

4. Plaintiff's claims are barred by the doctrine of waiver.

5. Plaintiff's claims are barred by its failure to mitigate damages.

6. Plaintiff's claims are barred by its own conduct preventing Dahmes from performing pursuant to the terms of the parties' agreement.

7. The conduct, acts, and/or omissions of the Plaintiff caused all or part of the damages it purports and now seeks.

8. Plaintiff's claims are barred by its own failure to resume performance pursuant to the terms of the parties' agreement.

9. Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

WHEREFORE, Defendant Dahmes Stainless, Inc. prays for relief as stated herein, and further prays that Plaintiff Rembrandt Enterprises, Inc. Complaint be dismissed with prejudice and that Rembrandt take nothing by way of the Complaint.

## COUNTERCLAIMS

Defendant-Counterclaim Plaintiff Dahmes Stainless, Inc. ("Dahmes"), for its Counterclaim against Plaintiff-Counterclaim Defendant Rembrandt Enterprises, Inc. ("Rembrandt"), states and alleges:

## PARTIES AND JURISDICTION

1. Dahmes is a Minnesota corporation with its principal place of business in New London, Minnesota.

2. Rembrandt is an Iowa corporation with its principal place of business in Rembrandt, Iowa.

3. The Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1332, in that the matter in controversy is between citizens of different states and that the matter in controversy exceeds the sum or value of $75,000. In addition, the claims

asserted in this action are also compulsory counterclaims to the claims made in Rembrandt's Complaint. The Court therefore has supplemental jurisdiction over Dahmes's claims against Rembrandt pursuant to 28 U.S.C. § 1367, in that the claims arise out of the transactions and occurrences that are the subject matter of the claims enumerated in Rembrandt's Complaint and form part of the same case or controversy under Article III of the United States Constitution.

## FACTUAL BACKGROUND

4. Rembrandt is one of the larger egg producing and processing companies in the United States.

5. Dahmes specializes in the design and manufacturing of advanced drying systems for use in various industrial applications, including the drying of egg yolks and whole eggs.

6. After extensive negotiations, on or about November 20, 2014, Rembrandt and Dahmes entered into a contract titled "Agreement Between Rembrandt Enterprises, Inc. and Dahmes Stainless, Inc." (the "Agreement"). Dahmes agreed to provide the design, manufacture, and install a specialized, made-to-order ductless dryer system for Rembrandt at its facility in Thompson, Iowa (the "Project"). (A true and correct copy of the Agreement is attached as Exhibit A to the Complaint and is the subject of Defendant's Motion to Seal (Doc. No. 1, pg. 7-37 of 44)).

7. The Agreement required Rembrandt provide Dahmes with a down payment totaling thirty-percent of the contract price, which Rembrandt paid to Dahmes on or about November 21, 2014.

8. Rembrandt made two additional full progress payments and one partial

9

progress payment prior to May 18, 2015.

9. On or about May 14, 2015, Rembrandt notified Dahmes that, in response to an Avian Flu outbreak, effective immediately: "Dahmes should cease and desist any and all work on the Project, and should not sign any further contracts and commitments until expressly directed by Rembrandt, in writing, to do so." This letter contemplates further discussions of a "hard stop" versus a "soft stop." (This May 14, 2015 email is attached as Exhibit B to the Complaint (Doc. No. 1, pg. 38 of 44)).

10. As of May 14, 2015, Dahmes performed all conditions, covenants, and promises required by Dahmes on its part to be performed in accordance with the terms and conditions of the Agreement.

11. After May 18, 2015, Rembrandt did not make any additional progress payments due to Dahmes under the Agreement.

12. Between May and October 2015, Rembrandt repeatedly indicated to Dahmes that it was still interested in pursuing the continuation of Agreement as soon as the impact of the Avian Flu was assessed.

13. Dahmes repeatedly asked Rembrandt when Dahmes could resume work on the Project or, in the alternative, come to a business resolution regarding the Project and the parties' contractual obligations under the Agreement.

14. At all times during this period, Dahmes was ready and willing to resume work on the Project and perform pursuant to the Parties' Agreement.

15. Upon information and belief, during this time period, although Rembrandt's Rembrandt, Iowa layer facility was confirmed positive for Avian Flu, Rembrandt had access to other egg sources, either from its own unaffected facilities or by purchasing eggs from

10

Case 5:15-cv-04248-LTS-KEM   Document 14   Filed 04/01/16   Page 10 of 16

other layer vendors. Rembrandt was capable of repopulating its egg population within several months and continuing its planned operations in Thompson, Iowa.

16. On October 22, 2015, Rembrandt provided Dahmes with written notice it was terminating the Agreement and unequivocally communicated to Dahmes its intention, both through its words and its conduct, that it would not make any further progress payments and that Rembrandt should refund its prior payments and tender any work that had been performed on the Project to Rembrandt. Rembrandt's termination letter stated: "We certainly recognize that Dahmes incurred expenses in performing through the date of receipt of this notification." (A true and correct copy of this October 22, 2015 email is attached as Exhibit 1).

17. Also on October 22, 2015, Rembrandt contemplated continuing its operations at the Thompson facility and foresaw that its business would resume and the need for a dryer system would remain. Rembrandt stated: "We would like, as part of these discussions, to consider including provision for a future dryer project in the event Rembrandt is able to in the future move ahead on such a project." (*See* Exhibit 1).

18. Despite Rembrandt's termination of the Agreement on October 22, 2015, and at no time thereafter, did Rembrandt provide notice to Dahmes that it was terminating the Agreement pursuant to the Agreement's force majeure clause.

19. On or about November 11, 2015, in response to Rembrandt's repudiation of the Agreement, Dahmes provided notice to Rembrandt that it considered Rembrandt to have terminated the Agreement without cause, that Rembrandt was in material breach of the Agreement, that Dahmes would suspend any further performance under the Agreement, and that Dahmes was entitled to damages for breach of contract resulting from Rembrandt's

11

breach as permitted by the Agreement and in accordance with Minnesota law. (The two November 11, 2015 emails are attached as Exhibit C to the Complaint (Doc. No. 1, pg. 39-40 of 44)).

20.     Rembrandt did not attempt to remedy this breach. Instead, Rembrandt filed its Complaint in this matter on December 9, 2015, seeking a declaratory judgment that Rembrandt did not breach the Agreement and seeking various equitable remedies.

21.     Rembrandt attached two documents to its Complaint that included confidential and proprietary information pertaining to Dahmes's business furnished to Rembrandt in strict confidence – Exhibits A and D of the Complaint – and made no attempt to seal or limit the disclosure of these documents.

22.     At least one news outlet, the Globe Gazette, published Rembrandt's Complaint – including Exhibits A and D of the Complaint – further disseminating Dahmes's confidential and proprietary information in violation of section 13 of the Agreement.

## COUNT ONE: BREACH OF CONTRACT – NON-DISCLOSURE AGREEMENT

23.     Dahmes realleges, adopts, and incorporates by reference all paragraphs above.

24.     Section 13(b) of the Agreement between Rembrandt and Dahmes contains a valid and enforceable confidentiality and non-disclosure agreement. Section 13(b) states: "All financial records and financial documents pertaining to Dahmes's business furnished to Rembrandt shall be maintained by Rembrandt in strict confidence and not disclosed by Rembrandt to any person or entity at any time for any reason."

25.     Section 13(d) of the Agreement required Rembrandt to maintain Dahmes's financial records and documents in strict confidence even after the Agreement was

12

terminated or expired on its own terms.

26. Rembrandt understood that Section 13(b) of the Agreement was an essential term for Dahmes under the Agreement because Dahmes would never share its sensitive financial records and financial documents with another party without any assurance that the other party would treat Dahmes's financial records and financial documents in the strictest confidence.

27. Rembrandt breached Section 13(b) of the Agreement when it disclosed Dahmes's financial records and documents to third parties, including but not limited to its filing of Exhibit A and Exhibit D with the Court without first seeking leave from the Court to file Dahmes's financial records and documents under seal or obtain Dahmes's prior approval to disclose this information.

28. After Rembrandt filed this lawsuit against Dahmes, the Globe Gazette published a story about the lawsuit and provided direct access to the Complaint and its exhibits on its website.

29. Dahmes performed all of its obligations under Section 13 of the Agreement with Rembrandt.

30. As a direct and proximate cause of Rembrandt's acts, Dahmes has suffered and will continue to suffer substantial general, incidental, and consequential damages, and Dahmes is entitled to interest at a rate of eighteen percent (18%) per year from the date of non-payment and attorneys' fees in accordance with the Agreement.

COUNT TWO: BREACH OF CONTRACT – REPUDIATION

31. Dahmes realleges, adopts, and incorporates by reference all paragraphs above.

32. The Agreement constitutes a valid and enforceable contract between

Rembrandt and Dahmes.

33. Dahmes performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Agreement, except to the extent that such obligations have been excused or Rembrandt prevented Dahmes from performing them, and all conditions precedent to Rembrandt's obligations under the Agreement have been satisfied or waived.

34. Rembrandt breached the parties' Agreement by repudiating, without cause, the Agreement, including its obligation to pay Dahmes the remaining progress payments for Dahmes to finish its work on the Project.

35. Rembrandt also prevented Dahmes from making the Project's dryer system mechanically complete by December 1, 2015, and completing the Project by January 1, 2016, in material breach of the Agreement.

36. Rembrandt's actions unjustifiably impeded Dahmes from performing the contract, and therefore, these actions materially breached the implied covenant of good faith and fair dealing.

37. Dahmes is entitled to its damages as prescribed by Minn. Stat. Ann. § 336.2-708, set forth by the Agreement, and/or otherwise allowable under law.

38. As a direct and proximate cause of Rembrandt's acts, Dahmes has suffered and will continue to suffer substantial general, incidental, and consequential damages, and Dahmes is entitled to interest at a rate of eighteen percent (18%) per year from the date of non-payment and attorneys' fees in accordance with the Agreement.

## PRAYER FOR RELIEF

Counterclaim-Plaintiff Dahmes Stainless, Inc. respectfully requests that the Court

enter judgment against Counterclaim-Defendant Rembrandt Enterprises, Inc. as follows:

1. For monetary damages, including compensatory, incidental, and consequential damages, in an amount to be proven at trial;

2. For reasonable attorneys' fees as provided in the parties' Agreement;

3. For the costs of the suit;

4. For prejudgment interest as provided in the parties' Agreement; and

5. For all such further relief as the Court may deem just and proper.

SIMMONS PERRINE MOYER BERGMAN, PLC

BY: /s/ Erin R. Nathan
Robert E. Konchar, AT0004383
Erin R. Nathan, AT0009092
Jacob W. Nelson AT0010431
115 3rd Street SE, Suite 1200
Cedar Rapids, IA  52401
Telephone:  319-366-7641
Facsimile:  319-366-1917
Email:  bkonchar@simmonsperrine.com
　　　　　enathan@simmonsperrine.com
　　　　　jnelson@simmonsperrine.com
ATTORNEYS FOR DEFENDANT

CERTIFICATE OF SERVICE

      I hereby certify that on April 1, 2015, I filed the foregoing with the Clerk of Court using the ECF system, which will send notification of said filing to the following:

John C. Gray
Jessica A. Uhlenkamp
Heidman Law Firm, LLP
1128 Historic Fourth Street
P.O. Box 3086
Sioux City, IA 51102-0386

Alain M. Baundry
Harry N. Niska
Ross Orenstein & Baudry, LLC
222 South Ninth Street, Suite 470
Minneapolis, MN 55402

      /s/ Erin R. Nathan