UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| Rembrandt Enterprises, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Dahmes Stainless, Inc., <br><br> Defendant. | Case No. 15-cv-4248 <br><br> **Plaintiff-Counterclaim Defendant's Answer to Defendant-Counterclaim Plaintiff's Counterclaims** |

Plaintiff-Counterclaim Defendant Rembrandt Enterprises, Inc. ("Rembrandt") for its Answer to Counterclaims filed by Defendant-Counterclaim Plaintiff Dahmes Stainless, Inc.'s ("Dahmes"), states the following:

## PARTIES AND JURISDICTION

1. Dahmes is a Minnesota corporation with its principal place of business in New London, Minnesota.

RESPONSE: Admitted.

2. Rembrandt is an Iowa corporation with its principal place of business in Rembrandt, Iowa.

RESPONSE: Admitted.

3. The Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1332, in that the matter in controversy is between citizens of different states and that the matter in controversy exceeds the sum or value of $75,000. In addition, the claims asserted in this action are also compulsory counterclaims to the claims made in Rembrandt's Complaint. The Court therefore has supplemental jurisdiction over Dahmes's claims against Rembrandt

pursuant to 28 U.S.C. § 1367, in that the claims arise out of the transactions and occurrences that are the subject matter of the claims enumerated in Rembrandt's Complaint and form part of the same case or controversy under Article III of the United States Constitution.

RESPONSE: Admitted.

## FACTUAL BACKGROUND

4. Rembrandt is one of the larger egg producing and processing companies in the United States.

RESPONSE: Admitted.

5. Dahmes specializes in the design and manufacturing of advanced drying systems for use in various industrial applications, including the drying of egg yolks and whole eggs.

RESPONSE: Admitted upon information and belief.

6. After extensive negotiations, on or about November 20, 2014, Rembrandt and Dahmes entered into a contract titled "Agreement Between Rembrandt Enterprises, Inc. and Dahmes Stainless, Inc." (the "Agreement"). Dahmes agreed to provide the design, manufacture, and install a specialized, made-to-order ductless dryer system for Rembrandt at its facility in Thompson, Iowa (the "Project"). (A true and correct copy of the Agreement is attached as Exhibit A to the Complaint and is the subject of Defendant's Motion to Seal (Doc. No. 1, pg. 7-37 of 44)).

RESPONSE: Admitted.

7. The Agreement required Rembrandt provide Dahmes with a down payment totaling thirty-percent (30%) of the contract price, which Rembrandt paid to Dahmes on or about November 21, 2014.

RESPONSE: Admitted.

8. Rembrandt made two additional full progress payments and one partial progress payment prior to May 18, 2015.

RESPONSE: Admitted.

9. On or about May 14, 2015, Rembrandt notified Dahmes that, in response to an Avian Flu outbreak, effective immediately: "Dahmes should cease and desist any and all work on the Project, and should not sign any further contracts and commitments until expressly directed by Rembrandt, in writing, to do so." This letter contemplates further discussions of a "hard stop" versus a "soft stop." (This May 14, 2015 email is attached as Exhibit B to the Complaint (Doc. No. 1, pg. 38 of 44)).

RESPONSE: Admitted.

10. As of May 14, 2015, Dahmes performed all conditions, covenants, and promises required by Dahmes on its part to be performed in accordance with the terms and conditions of the Agreement.

RESPONSE: Rembrandt is without information sufficient to admit or deny the allegations of Paragraph 10, therefore it is denied.

11. After May 18, 2015, Rembrandt did not make any additional progress payments due to Dahmes under the Agreement.

RESPONSE: Admitted.

12. Between May and October 2015, Rembrandt repeatedly indicated to Dahmes that it was still interested in pursuing the continuation of Agreement as soon as the impact of the Avian Flu was assessed.

RESPONSE: Denied.

13. Dahmes repeatedly asked Rembrandt when Dahmes could resume work on the

Project or, in the alternative, come to a business resolution regarding the Project and the parties' contractual obligations under the Agreement.

RESPONSE: Denied.

14. At all times during this period, Dahmes was ready and willing to resume work on the Project and perform pursuant to the Parties' Agreement.

RESPONSE: Rembrandt is without information sufficient to admit or deny the allegations of Paragraph 14, therefore it is denied.

15. Upon information and belief, during this time period, although Rembrandt's Rembrandt, Iowa layer facility was confirmed positive for Avian Flu, Rembrandt had access to other egg sources, either from its own unaffected facilities or by purchasing eggs from other layer vendors. Rembrandt was capable of repopulating its egg population within several months and continuing its planned operations in Thompson, Iowa.

RESPONSE: Rembrandt admits that it had some egg producing facilities that were unaffected by high pathogenic avian influenza in 2015, and that it purchased some eggs from other egg producers. The remaining allegations in Paragraph 15 are denied.

16. On October 22, 2015, Rembrandt provided Dahmes with written notice it was terminating the Agreement and unequivocally communicated to Dahmes its intention, both through its words and its conduct, that it would not make any further progress payments and that Rembrandt should refund its prior payments and tender any work that had been performed on the Project to Rembrandt. Rembrandt's termination letter stated: "We certainly recognize that Dahmes incurred expenses in performing through the date of receipt of this notification." (A true and correct copy of this October 22, 2015 email is attached as Exhibit 1).

RESPONSE: Rembrandt admits that it sent an email to Dahmes on October 22, 2015, and

states that this email speaks for itself. The remaining allegations in Paragraph 16 are denied.

17. Also on October 22, 2015, Rembrandt contemplated continuing its operations at the Thompson facility and foresaw that its business would resume and the need for a dryer system would remain. Rembrandt stated: "We would like, as part of these discussions, to consider including provision for a future dryer project in the event Rembrandt is able to in the future move ahead on such a project." (See Exhibit 1).

RESPONSE: Rembrandt admits that it sent an email to Dahmes on October 22, 2015, and states that this email speaks for itself. The remaining allegations in Paragraph 17 are denied.

18. Despite Rembrandt's termination of the Agreement on October 22, 2015, and at no time thereafter, did Rembrandt provide notice to Dahmes that it was terminating the Agreement pursuant to the Agreement's force majeure clause.

RESPONSE: Denied.

19. On or about November 11, 2015, in response to Rembrandt's repudiation of the Agreement, Dahmes provided notice to Rembrandt that it considered Rembrandt to have terminated the Agreement without cause, that Rembrandt was in material breach of the Agreement, that Dahmes would suspend any further performance under the Agreement, and that Dahmes was entitled to damages for breach of contract resulting from Rembrandt's breach as permitted by the Agreement and in accordance with Minnesota law. (The two November 11, 2015 emails are attached as Exhibit C to the Complaint (Doc. No. 1, pg. 39-40 of 44)).

RESPONSE: Rembrandt admits that Dahmes sent it email communications on November 11, 2015, and states that the emails speak for themselves. Any remaining allegations in Paragraph 19 are denied.

20. Rembrandt did not attempt to remedy this breach. Instead, Rembrandt filed its Complaint in this matter on December 9, 2015, seeking a declaratory judgment that Rembrandt did not breach the Agreement and seeking various equitable remedies.

RESPONSE: Rembrandt admits that it filed the Complaint on December 9, 2015, and states that the Complaint speaks for itself. Any remaining allegations in Paragraph 20 are denied.

21. Rembrandt attached two documents to its Complaint that included confidential and proprietary information pertaining to Dahmes's business furnished to Rembrandt in strict confidence – Exhibits A and D of the Complaint – and made no attempt to seal or limit the disclosure of these documents.

RESPONSE: Denied.

22. At least one news outlet, the Globe Gazette, published Rembrandt's Complaint – including Exhibits A and D of the Complaint – further disseminating Dahmes's confidential and proprietary information in violation of section 13 of the Agreement.

RESPONSE: Rembrandt is without information sufficient to admit or deny the allegations regarding the Globe Gazette's alleged publication of the Complaint, therefore it is denied. Any remaining allegations in Paragraph 22 are denied.

## COUNT ONE: BREACH OF CONTRACT – NON-DISCLOSURE AGREEMENT

23. Dahmes realleges, adopts, and incorporates by reference all paragraphs above.

RESPONSE: Rembrandt adopts and incorporates by reference its responses to all paragraphs above.

24. Section 13(b) of the Agreement between Rembrandt and Dahmes contains a valid and enforceable confidentiality and non-disclosure agreement. Section 13(b) states: "All financial records and financial documents pertaining to Dahmes's business furnished to

Rembrandt shall be maintained by Rembrandt in strict confidence and not disclosed by Rembrandt to any person or entity at any time for any reason."

RESPONSE: Rembrandt states that the Agreement speaks for itself. Any remaining allegations are denied.

25. Section 13(d) of the Agreement required Rembrandt to maintain Dahmes's financial records and documents in strict confidence even after the Agreement was terminated or expired on its own terms.

RESPONSE: Rembrandt states that the Agreement speaks for itself. Any remaining allegations are denied.

26. Rembrandt understood that Section 13(b) of the Agreement was an essential term for Dahmes under the Agreement because Dahmes would never share its sensitive financial records and financial documents with another party without any assurance that the other party would treat Dahmes's financial records and financial documents in the strictest confidence.

RESPONSE: Rembrandt states that the Agreement speaks for itself. Any remaining allegations are denied.

27. Rembrandt breached Section 13(b) of the Agreement when it disclosed Dahmes's financial records and documents to third parties, including but not limited to its filing of Exhibit A and Exhibit D with the Court without first seeking leave from the Court to file Dahmes's financial records and documents under seal or obtain Dahmes's prior approval to disclose this information.

RESPONSE: Denied. Rembrandt further notes that Exhibit D was not sent by Dahmes until after Dahmes had already declared the Agreement terminated, and thus it did not come within the scope of Section 13.

28. After Rembrandt filed this lawsuit against Dahmes, the Globe Gazette published a story about the lawsuit and provided direct access to the Complaint and its exhibits on its website.

RESPONSE: Rembrandt is without information sufficient to admit or deny the allegations regarding the Globe Gazette's alleged publication of the Complaint, therefore it is denied.

29. Dahmes performed all of its obligations under Section 13 of the Agreement with Rembrandt.

RESPONSE: Denied.

30. As a direct and proximate cause of Rembrandt's acts, Dahmes has suffered and will continue to suffer substantial general, incidental, and consequential damages, and Dahmes is entitled to interest at a rate of eighteen percent (18%) per year from the date of non-payment and attorneys' fees in accordance with the Agreement.

RESPONSE: Denied.

## COUNT TWO: BREACH OF CONTRACT – REPUDIATION

31. Dahmes realleges, adopts, and incorporates by reference all paragraphs above.

RESPONSE: Rembrandt adopts and incorporates by reference its responses to all paragraphs above.

32. The Agreement constitutes a valid and enforceable contract between Rembrandt and Dahmes.

RESPONSE: Denied.

33. Dahmes performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Agreement, except to the extent

that such obligations have been excused or Rembrandt prevented Dahmes from performing them, and all conditions precedent to Rembrandt's obligations under the Agreement have been satisfied or waived.

RESPONSE: Denied.

34. Rembrandt breached the parties' Agreement by repudiating, without cause, the Agreement, including its obligation to pay Dahmes the remaining progress payments for Dahmes to finish its work on the Project.

RESPONSE: Denied.

35. Rembrandt also prevented Dahmes from making the Project's dryer system mechanically complete by December 1, 2015, and completing the Project by January 1, 2016, in material breach of the Agreement.

RESPONSE: Denied.

36. Rembrandt's actions unjustifiably impeded Dahmes from performing the contract, and therefore, these actions materially breached the implied covenant of good faith and fair dealing.

RESPONSE: Denied.

37. Dahmes is entitled to its damages as prescribed by Minn. Stat. Ann. § 336.2-708, set forth by the Agreement, and/or otherwise allowable under law.

RESPONSE: Denied.

38. As a direct and proximate cause of Rembrandt's acts, Dahmes has suffered and will continue to suffer substantial general, incidental, and consequential damages, and Dahmes is entitled to interest at a rate of eighteen percent (18%) per year from the date of non-payment and attorneys' fees in accordance with the Agreement.

RESPONSE: Denied.

## GENERAL DENIAL

Except as previously admitted, Rembrandt denies each and every allegation contained in the Counterclaims, including without limitation, the headings and subheadings, and specifically denies liability to Dahmes, or that Dahmes has suffered any legally cognizable harm or damages for which Rembrandt is responsible. Pursuant to Rule 8(b)(6) of the Federal Rule of Civil Procedure, allegations contained in the Complaint to which no responsive pleading is required shall be deemed denied. Rembrandt expressly reserves the right to amend and/or supplement its Answer. With respect to all paragraphs in the Complaint which Dahmes prays for damages or other relief, Rembrandt denies that Dahmes is so entitled under the law.

## AFFIRMATIVE DEFENSES

Rembrandt asserts the following affirmative and other defenses, without assuming the burden of proof on such defenses that would otherwise rest on Dahmes, and reserving the right to raise any additional defenses not asserted herein of which it becomes aware through discovery or other investigation:

1. The Counterclaims, and each and every claim stated therein, fails to state a claim upon which relief can be granted.

2. Dahmes's counterclaims are barred by the doctrine of assumption of risk.

3. Dahmes's counterclaims are barred by its failure to perform pursuant to the terms of the parties' agreement.

4. Dahmes's counterclaims are barred by the doctrine of waiver.

5. Dahmes's counterclaims are barred by its failure to mitigate damages.

6. The conduct, acts, and/or omissions of Dahmes caused all or part of the damages it purports and now seeks.

7. Dahmes's counterclaims are barred by its own failure to resume performance pursuant to the terms of the parties' agreement.

8. Dahmes's counterclaims are barred, in whole or in part, by the doctrine of unclean hands.

WHEREFORE, Defendant Rembrandt Enterprises, Inc. prays for relief as stated herein, and further prays that Plaintiff Dahmes Stainless, Inc.'s Counterclaims be dismissed with prejudice and that Dahmes take nothing by way of the Counterclaims.

Dated: April 21, 2016　　　　　　　　　HEIDMAN LAW FIRM, LLP

BY: _/s/ Jessica Uhlenkamp_____
John C. Gray (AT0002938)
Jessica A. Uhlenkamp (AT0012404)
1128 Historic Fourth Street
P.O. Box 3086
Sioux City, IA 51102-0386
Telephone: (712) 255-8838
Facsimile: (712) 258-6714
John.Gray@heidmanlaw.com
Jessica.Uhlenkamp@heidmanlaw.com

**ROSS ORENSTEIN & BAUDRY LLC**
Alain M. Baudry
Harry N. Niska
222 South Ninth Street, Suite 470
Minneapolis, Minnesota 55402
Telephone: (612) 436-9800
Facsimile:　　　(612) 436-9819
E-mail:　abaudry@rossbizlaw.com
E-mail:　hniska@rossbizlaw.com

**ATTORNEYS FOR PLAINTIFF-COUNTERCLAIM DEFENDANT REMBRANDT ENTERPRISES, INC.**

Copy to:

Robert E. Konchar
Erin R. Nathan
Jacob W. Nelson
Simmons Perrine Moyer Bergman, PLC
115 Third Street, SE, Ste. 1200
Cedar Rapids, IA 52401

## CERTIFICATE OF SERVICE

    The undersigned certifies that the foregoing instrument was served upon all parties to the above cause by electronically filing with the Clerk of Court through the Court's CM/ECF system which will send notification of such filing to all parties who have requested or are entitled to such electronic notice on April 21, 2016.

Signature /s/ James Ully