UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| Rembrandt Enterprises, Inc., <br><br> Plaintiff-Counterclaim Defendant, <br><br> vs. <br><br> Dahmes Stainless, Inc., <br><br> Defendant-Counterclaim Plaintiff. | Case No. 15-cv-4248 <br><br> **PLAINTIFF'S TRIAL BRIEF** |

This trial is about how much of the $4.3 million that Rembrandt paid Dahmes for an $8.9 million dryer that was never built needs to be refunded to Rembrandt. Rembrandt's position is that its performance under the parties' agreement is excused under the doctrine of frustration of purpose and that Dahmes is only entitled to keep what it actually spent building the dryer until it was asked to stop: $991,400.69. Even though Dahmes was holding on to $4.3 million of Rembrandt's funds it refused to return a single penny or provide documentary backup for its claim that it was entitled to $3.8 million of that amount. This litigation ensued.

**Issue 1: Whether Rembrandt's performance is excused under the doctrine of frustration of purpose.**

This issue has been fully briefed in connection with the parties' cross-motions for summary judgment. The doctrine of frustration of purpose applies where: (1) The party's principal purpose in making the contract is frustrated; (2) without that party's fault; (3) by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made. *City of Savage v. Formanek*, 459 N.W.2d 173, 176 (Minn. Ct. App. 1990) (internal citation omitted).

Rembrandt contends the doctrine applies here to excuse its performance for the reasons set forth in its briefs on those motions.

**Issue 2: Whether Dahmes' claim for lost profits claim has any reasonable basis.**

Rembrandt had to bring this litigation to get Dahmes to produce its financial records that it claimed supported its withholding of all of Rembrandt's funds, and to make payment to Rembrandt of amounts that even Dahmes admitted it owed Rembrandt. Up until the lawsuit, Dahmes had presented Rembrandt with just a single piece of paper (Trial Exhibit 234) listing line items that Dahmes insisted were owed: $2.4 million in alleged lost profits, $992,000 in expenses, and $329,000 in alleged business interruption costs. Dahmes refused to refund even the $546,000 it acknowledged it owed to Rembrandt, without any cause whatsoever. To add insult to injury, Dahmes refused to produce any financial records to back up its claims. The reason Dahmes refused to produce its accounting records is now clear: those records simply do not support Dahmes' claims. Rather, they show that Dahmes actually overcharged Rembrandt for the dryer and had no track record of achieving the profits that it claims it would have achieved here.

"Under Minnesota law, damages may not be speculative, remote, or conjectural." *Storage Tech. Corp. v. Cisco Sys. Inc.*, 395 F.3d 921, 928 (8th Cir. 2005). Here, the dryer was cancelled when Dahmes had incurred less than 15% of its projected costs, and Dahmes' corporate representative admitted under oath it would be "speculation" to say what the final cost (and therefore profit) would have been on the project. Dahmes has made extensive efforts to walk back this admission, including attempting to introduce expert testimony about the profit margins of its competitors under guise of "lay opinion," and recently inappropriately supplementing its discovery responses less than a month before trial in a futile effort to bolster its purported track record of 24 percent profit.

Three weeks before trial, Dahmes produced a slew of new damage documents intended to substantiate its claims. These belated efforts to rehabilitate its lost profits claim fail. Whether the basis of a lost profits claim is reasonably certain "depends upon the circumstances of the particular case." *Cardinal Consulting Co. v. Circo Resorts, Inc.*, 297 N.W.2d 260, 267 (Minn. 1980). Dahmes asserts that, generally speaking, it achieves a 25% profit margin and the Court ought to take it for granted that it would have achieved the same here. Rembrandt will show that that is not true. Furthermore, Dahmes "may not simply refer to its history of [alleged profits on all of its jobs] and extrapolate forward in time," as the Minnesota Court of Appeals has held. *Curtis v. Jennie-O Turkey Store, Inc.*, No. A10-50, 2010 WL 3546232, at*5 (Minn. Ct. App. Sep. 14, 2010) (rejecting argument that historical profits alone were sufficient evidence of lost profits and stating that "if a company has only a few customers, each of whom contributes a known, significant amount of revenues, a plaintiff may need to introduce more specific evidence to prove lost profits with reasonable certainty"). Simply put, Dahmes cannot come close to meeting its burden of proving lost profits with reasonable certainty.

The rest of Dahmes' damages claims are similarly deficient. Dahmes apparently seeks, in the alternative, $3,476,678 in alleged lost profits for five dryers for other potential projects that it claimed, against all evidence, that it would have been awarded if had not been for the Rembrandt dryer project. This claim is sheer fantasy and involves projects that either Dahmes was rejected for, never bid for, never went forward or for which Dahmes is uncertain whether the project went forward at all. Similarly, Dahmes' claim for $329,900 in business interruption costs in addition to lost profits is not supported by its documents. Furthermore, all of the alleged costs falling into this category are overhead costs that Dahmes would have incurred if it had built the dryer. Therefore its claim for these costs in addition to lost profits is double counting. *See, e.g.,*

3

4838-3967-8286.1
Case 5:15-cv-04248-LTS-KEM   Document 89   Filed 09/01/17   Page 3 of 4

*Industrial Graphics, Inc. v. Asahi Corp.*, 485 F. Supp. 793, 808 (D. Minn. 1980) (applying Minnesota law and holding that "financing costs and overhead expense which relate to [breach of contract claim] are not recoverable in total because such expenses would have been incurred by [plaintiff] even if the [products] had been as warranted").

Consequently, Rembrandt will be asking the Court for an award of all or most of the $2,442,882 of its funds that Dahmes is still holding as alleged lost profits plus the additional $329,900 it claims as interruption costs. Further, Rembrandt will seek an award of interest on these amounts, as well as on the $546,525 of Rembrandt's money that Dahmes admitted it owed Rembrandt but refused to pay for over a year, together with interest on overcharges that Dahmes concealed until it was forced to produce its financial records in the case.

Dated: September 1, 2017      **KUTAK ROCK LLP**

      *s/ Alain M. Baudry*
Alain M. Baudry
Matthew R. Veenstra
60 South Sixth Street, Suite 3400
Minneapolis, MN 55402
Telephone: (612) 334-5000
Facsimile: (612) 334-5050
E-mail: Alain.Baudry@kutakrock.com
      Matthew.Veenstra@kutakrock.com

**HEIDMAN LAW FIRM, LLP**
John C. Gray
Jessica A. Uhlenkamp
1128 Historic Fourth Street
P.O. Box 3086
Sioux City, IA 51102-0386

*Attorneys for Plaintiff*